IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.	CRIMINAL ACTION NO. 3:18-00211

PAUL ANTHONY CUNNINGHAM

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Paul Anthony Cunningham's *pro se* Emergency Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] ECF

---

[1] Section 3582(c)(1)(A)(i) provides:

> The court may not modify a term of imprisonment once it has been imposed except that--
>
> **(1)** in any case--
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> **(i)** extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A).

No. 39. In his motion, Defendant argues for compassionate release so that he can care for his ten-year-old daughter. Defendant also asserts he has underlying health conditions that make him particularly susceptible to severe illness if he contracts COVID-19. The United States has responded to Defendant's motion and states that it objects to Defendant's release. Upon review, the Court **GRANTS** Defendant's motion for the following reasons.

On January 27, 2020, Defendant pled guilty to Count One of a three count indictment, charging him with distributing heroin. On June 3, 2020, this Court sentenced Defendant to fifteen months imprisonment and three years of supervised release. Defendant is scheduled to be released from FCI Milan on September 3, 2021.

"The First Step Act embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Williams*, No. 2:18-CR-00148, 2020 WL 7646806, at *1 (S.D. W. Va. Dec. 23, 2020) (internal quotation marks and citations omitted). To grant compassionate release, the Court must find the defendant has exhausted his administrative remedies, there are "extraordinary and compelling reasons" for release, the defendant is not a danger to the safety of others, and release is consistent with the § 3553(a) factors. *Id*. (citations omitted). If release is granted, the Court "'may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment.'" *Id*. at *2 (quoting 18 U.S.C. § 3582(c)(1)(A)). "In doing so, the court may modify an existing term of supervised release

to add a period of home detention, only if it finds that home detention is a 'substitute for imprisonment." *Id*. at *2 (internal quotation marks and citations omitted).

With respect to exhaustion, Defendant attached an email dated December 8, 2020 to the MIL/RIS Coordinator[2] in which Defendant requests his file be reviewed for compassionate release due to his daughter's circumstances and his medical conditions.[3] There is no indication Defendant received a response to his email, and the current motion was filed with the Court on January 21, 2021, more than thirty days after Defendant made his request. Although the United States contends that the email is insufficient to show exhaustion, the Court disagrees. Defendant clearly requested compassionate release in the email to the Coordinator at the facility and more than thirty days have passed since he made his request. Therefore, the Court finds he has satisfied exhaustion.

Turning to whether Defendant has stated "extraordinary and compelling reasons" for release, the Court finds that he also has met this requirement. After reviewing Defendant's motion, the Court asked the Probation Office to investigate his claim that his family circumstances constitute "extraordinary and compelling reasons" that warrant release due to "[t]he death . . . of the caregiver of [his] minor child[.]" U.S.S.G. §1B1.13 cmt. 1(C)(i). Upon investigation by this District's Probation Office, it appears that Defendant's daughter's mother died approximately four

---

[2] It appears that "MIL/RIS" is an acronym for Milan's Reduction in Sentence Coordinator.

[3] Defendant's Inmate Registration Number appears in the "FROM" line of the email, and the content of the email clearly was written by Defendant.

years ago and he was granted sole custody. Prior to his incarceration, Defendant and his daughter lived with Defendant's fiancé in Detroit, Michigan. Defendant's daughter continued to live with Defendant's fiancé after Defendant began serving his sentence in this case. Unfortunately, in November of 2020, Defendant's fiancé was murdered. Thereafter, Defendant's ex-wife, who is no relation to the child, agreed to take temporary custody of her until other suitable arrangements could be made. Defendant's ex-wife explained to the Probation Officer that she is not currently in a position to care and assume responsibility for the child until Defendant's scheduled release in September. Additionally, no other caregivers were identified in the investigation who will assume responsibility for Defendant's daughter until his release. Thus, the Court finds the unique circumstances here qualify as "extraordinary and compelling reasons" under §1B1.13 cmt. 1(C)(i).

In order for Defendant to be released, however, the Court also must find that he is not a danger to the safety of others and release is consistent with the § 3553(a) factors. Although Defendant has a significant criminal history, his underlying offense in the present case resulted in a base offense level of 12, with a total offense level of 10 after receiving acceptance of responsibility. After considering the § 3553(a) factors at his sentencing hearing, the Court found a term of imprisonment of 15 months was sufficient to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and afford adequate deterrence to criminal conduct. With respect to Defendant's criminal history, the Court specifically noted that most of his convictions were over twenty years old and his conduct had improved.

It appears from the Court's docket that Defendant reported to FCI Milan on August 10, 2020. ECF No. 38. Thus, Defendant already has served six months of his sentence and has less than seven months to serve until his projected release date. If released, Defendant states he intends for his daughter and himself to reside with his mother in Detroit, Michigan. This District's Probation Office spoke with Defendant's mother, who is agreeable to the arrangement. Additionally, the Probation Office in the Eastern District of Michigan also interviewed Defendant's mother and performed a virtual home inspection. Defendant's mother denied there are any firearms or weapons in her house, and the Eastern District of Michigan agreed to accept supervision of Defendant if he is granted compassionate release.

Based upon all the facts presented to the Court and a review of Presentence Report, the Court finds that Defendant can be released with a modification of the terms of his supervised release to ensure he is not a danger to the safety of others and his release will be consistent with the § 3553(a) factors. Specifically, the Court **MODIFIES** the terms of supervised release to include the special condition that Defendant be placed on home incarceration until September 3, 2021, as a substitute for incarceration. During home incarceration, Defendant shall remain at his mother's house twenty-four (24) hours a day, except for medical necessities, court appearances, or employment that does not interfere with his parental obligations. Defendant must obtain prior approval from his Probation Officer before leaving his mother's house for any of these reasons. To assure that Defendant complies with home incarceration, it shall be enforced with electronic monitoring. The defendant shall pay the costs of electronic monitoring. The remaining conditions of supervised release imposed by the Court at sentencing shall stay in effect. The Court finds this

sentence reflects the nature and circumstances of the offense, the history and characteristics of the defendant, and the needs for deterrence.

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's motion, **DIRECTS** this District's Probation Office to execute those documents necessary to transfer supervision to the Probation Office in the Eastern District of Michigan, and **DIRECTS** the Bureau of Prisons to take all steps necessary to release Defendant to home incarceration **on February 25, 2021**, which will allow sufficient time for the appropriate arrangements to be made.[4]

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, the United States Marshal, and the Warden of FCI Milan who should forward a copy of this Order to the appropriate BOP staff.

ENTER:    February 10, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[4]As the Court finds Defendant is entitled to compassionate release due to his family circumstances, the Court finds it unnecessary to address his contention he also should be granted release due to his medical conditions.